IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Berthold L.L.C. and<br>Berthold Direct Corporation,<br><br>      Plaintiffs,<br><br>v.<br><br>Target Corporation,<br><br>      Defendant. | Case No. 1:17-cv-07180 |

**Target Corporation's Memorandum in Support of its Motion to Dismiss**

  Berthold has not registered the copyrights that are at issue in this proceeding. Instead, Berthold's Second Amended Complaint identifies over a dozen copyright registrations for *different* pieces of software. Berthold cannot evade the Copyright Act's pre-suit registration requirement in this way. Furthermore, by trying to make this case into something that it is not—a case about the registered, rather than the unregistered, copyrights—Berthold fails to state a plausible claim for copyright infringement: Berthold does not allege that Target had access to the registered software, Berthold does not allege that the relevant portions of it are original or protectable, and Berthold does not allege substantial similarity.

  Despite drafting six different complaints in this proceeding, Berthold still does not state a claim for copyright infringement. And because copyright infringement is the sole basis for federal jurisdiction, Berthold cannot maintain its state law breach of contract claim. This case should therefore be dismissed in its entirety.

1

**BACKGROUND**

In 2013, Target paid $750 to purchase Berthold's Akzidenz-Grotesk Condensed BE OpenType software (the "Licensed Software"). (Doc. 45, ¶ 18; Doc. 45-1 at 15.) The Licensed Software is "font software"—software that can be used by computers to display a set of stylized characters (colloquially known as a "font").[1] (Doc. 45, ¶ 12.) The Licensed Software provides one way to display certain characters within the "Akzidenz Grotesk" family of typefaces. (*Id.*) Like all typefaces, Akzidenz Grotesk typefaces are not themselves copyrightable. *See* 37 C.F.R. 202.1(e) (listing "typeface" as a "work[] not subject to copyright"). But like any other piece of software, the font software used to display a typeface could be. There are many different font software programs capable of displaying Akzidenz Grotesk typefaces—Plaintiff's complaint, for instance, references twenty-six such programs. (*See id..*, ¶¶ 12, 18, 26.)

According to the Second Amended Complaint, Target obtained the Licensed Software from MyFonts.com. (Doc. 45, ¶ 18; Doc. 45-1 at 15.) Berthold claims that Target's purchase of the Licensed Software from MyFonts.com was governed by certain license terms, that Target violated those terms, and that Target consequently breached a contract with Berthold. (Doc. 45, ¶ 52.) Berthold also claims that, due to Target's alleged actions with respect to the Licensed Software and a third-party called Calango, Target is a direct and secondary copyright infringer. (*Id.*, ¶¶32-52.)

---

[1] As terms of art, the word "font" typically refers to software, while the word "typeface" refers to the stylized characters themselves—i.e., the font is used by the computer to display the typeface. *See Monotype Imaging, Inc. v. Bitstream Inc.*, 376 F. Supp. 2d 877, 882 n.1 (N.D. Ill. 2005).

Surprisingly, Berthold does not allege that it has a registered copyright in the Licensed Software—presumably it has no such registration, as Target has previously argued that Berthold's complaint cannot state a claim without one. (*See generally* Doc. 42.) Apparently in response to that argument, Berthold identifies thirteen copyright registrations for thirteen *different* pieces of Berthold software—the "Pro Software."[2] (*Id.*, ¶¶ 12, 26.) The Pro Software is not the Licensed Software. (*See id.*, ¶¶ 19, 26.) Still, Berthold claims that Target's infringement of the Licensed Software "amounted to" an infringement of the Pro Software, and that as a result, Berthold is excused from having to register the Licensed Software. (*See id.*, ¶ 22.)

#### ARGUMENT

Prior to initiating a copyright infringement suit, plaintiffs must comply with Section 411 of the Copyright Act. Section 411 requires copyright claimants to apply to register their work with the Copyright Office, and obtain a registration certificate or a refusal to register, prior to bringing an action for infringement. *See* 17 U.S.C. 411(a); *see also Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010); *Brooks-Ngwenya v. Indianapolis Pub. Sch.*, 564 F.3d 804, 806 (7th Cir. 2009) ("Compliance with the registration requirement . . . is a prerequisite to suing for infringement."). Section 411 is not jurisdictional, but it is a precondition to filing a copyright claim. *See Reed Elsevier*,

---

[2] All of the software identified in Berthold's Second Amended Complaint include the words "Akzidenz Grotesk," but they are not the same. They can effectively be split into two groups. The first group, the Licensed Software and perhaps another piece of software Target allegedly used, all contain the letters "BE." Berthold has no registrations for this "BE" or "Licensed Software." The second group, for which Berthold does have registrations, all contain the word "Pro"—this software is referred to herein as the "Pro Software."

3

559 U.S. at 159. Consequently, a copyright plaintiff who "fail[s] to plead compliance with the registration requirement" does not state a copyright claim. *Fourth Estate Public Benefit v. Wall-Street.com*, 856 F.3d 1338, 1339 (11th Cir. 2017) (affirming dismissal pursuant to Rule 12(b)(6)).

To state a copyright infringement claim, plaintiffs also must allege "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications v. Rural Telephone Service Co.*, 499 U.S. 340, 361 (1991); *see also Peters v. West*, 692 F.3d 629 (7th Cir. 2012). Copying generally requires "that the defendant had the opportunity to copy the original (often called 'access') and that the two works are 'substantially similar'." *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1099 (7th Cir. 2017).

The failure to plausibly allege these elements requires dismissal at the pleading stage. *See Peters*, 692 F.3d at 631 (affirming Rule 12(b)(6) dismissal of copyright case with prejudice); *Hobbs v. John*, 722 F.3d 1089, 1091 (7th Cir. 2013) (same).

I.  **The Second Amended Complaint Must be Dismissed Because Berthold Does Not Satisfy Section 411's Registration Requirement**

The Second Amended Complaint does not adequately allege registration of Berthold's copyrights in compliance with Section 411—it therefore fails to state a copyright infringement claim. *See Brooks-Ngwenya,* 564 F.3d at 806; *MG Design Associates v. Costar Realty Information*, 224 F. Supp. 3d 621, 634-35 (N.D. Ill. 2016) (holding that plaintiff "must allege registration" and "because this was not done prior to filing . . . the Court must dismiss" the claim).

4

The allegations underlying Berthold's claim are simple: Target downloaded the Licensed Software from MyFonts.com, then exceeded the scope of its license by sending a copy of the Licensed Software to Calango (a non-party) and receiving and using certain animations and videos Calango sent back. (Doc. 45, ¶¶ 18, 22-24.) Whatever the ultimate merits of this claim, it is without a doubt a claim for infringement *of the Licensed Software*. Berthold was therefore required, in order to state a claim for copyright infringement, to seek to register its putative copyright *in the Licensed Software* prior to bringing suit. *See Brooks-Ngwenya*, 564 F.3d at 808; *Gaiman v. McFarlane*, 360 F.3d 644, 655 (7th Cir. 2004) ("an application to register must be filed, and either granted or refused, before suit can be brought"). Because Berthold has not done this, the Second Amended Complaint must be dismissed.[3] 17 U.S.C. § 411.

Berthold attempts to evade the requirements of Section 411 by identifying over a dozen registrations for a *different* set of software: the "Pro Software."[4] (Doc. 45, ¶ 12, 26.) There is an obvious reason one might do this: older registrations can provide benefits that newer registrations cannot. For instance, Berthold would no doubt argue that these older registrations entitle it to a presumption that its copyright is valid—newer registrations for the Licensed Software likely would not be entitled to a presumption of

---

[3] Berthold's allegations are unclear, but it may also allege infringement of a kind of software that was not included in Target's license—Berthold refers to this software as "Akzidenz-Grotesk BE Regular." (Doc. 45, ¶ 26.) As with the other Licensed Software, Berthold relies on copyright registrations for the Pro Software (specifically, Akzidenz-Grotesk Pro Regular) to support its Akzidenz-Grotesk BE Regular infringement claim. Consequently, all of the arguments for dismissal apply equally to Akzidenz-Grotesk BE Regular, and Target seeks dismissal of the Akzidenz-Grotesk BE Regular claim on all of the grounds asserted herein.

[4] Defined herein as the registered software identified in paragraphs 12 and 26 and for which copyright registrations have been provided.

5

validity. *See* 17 U.S.C. § 410(c). Berthold will also claim that these older registration certificates entitle it to statutory damages of up to $150,000 and the recovery of its attorney fees—again, benefits that a newer registration for the Licensed Software could not provide. *See* 17 U.S.C. § 412. But there is nothing in the Copyright Act which allows Berthold to claim these benefits, or evade the registration requirement, by relying on *different* registrations. Berthold's complaint should therefore be dismissed.

Berthold argues that it *must* rely on the Pro Software registrations, as it does not believe that the Copyright Office will register the Licensed Software. (*See generally* Doc. 43.) That may or may not be true, but it makes no difference here—there is no exception to Section 411's registration requirement based on a mere belief that registration may not issue. *See* 17 U.S.C. § 411. Instead, Section 411 provides a specific procedure for cases where registration has been refused—it allows a lawsuit to proceed, but only *after* the application has "been delivered to the Copyright Office in proper form," "registration has been refused," and notice of the infringement suit "is served on the Register of Copyrights" so she may become a party to the proceeding at "her option." *Id.*; *see also Brooks-Ngwenya*, 564 F.3d at 807-08. If Berthold has applied for registration, and that application has been refused, then it must say so in order to satisfy Section 411 (and thereby lose any possible presumption of validity, statutory damages, or other benefit of a timely registration). But if Berthold has not, then it must proceed with the applications in order to comply with Section 411—even if it believes that those applications will be refused.

Through Section 411's registration requirement, Congress sought to ensure that the Copyright Office had an opportunity to bring its judgment to bear on a copyright claim prior to federal litigation over that copyright. The Seventh Circuit has strictly enforced the Copyright Act's similar requirement, also contained in Section 411 of the Act, that the Register of Copyrights be consulted before registrations are deemed invalid. *See DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 622-24 (7th Cir. 2013) (vacating a judgment of invalidity, reached after a fourteen-day trial, because the Register was not first consulted as required by Section 411(b)). Congress and the Courts have been clear: registration decisions must involve the Copyright Office, and its pronouncements merit substantial deference. *See , e.g., id.*; *Bonneville Int'l Corp. v. Peters*, 347 F.3d 485, 490 (3d Cir. 2003) (discussing the level of deference owed the Copyright Office). For these reasons and others, Berthold should not be permitted to evade the registration requirement here.

Moreover, enforcing the registration requirement will further the just administration of this case, as it will "neatly define[] the scope of litigation." *See Asche & Spencer Music, Inc. v. Principato-Young Entertainment*, 147 F. Supp. 3d 833, 838 (D. Minn 2015); *see also Neri v. Monroe*, 726 F.3d 989, 991-92 (7th Cir. 2013) (noting that registration "pins downs details about what intellectual-property rights have been claimed"). In fact, Berthold's failure to comply with the registration requirement have already resulted in discovery that is—in Berthold's view—extraordinary in scope. (*See* Doc. 39.) Berthold has sought discovery into hundreds of different pieces of software—the list, set forth in Berthold's written discovery requests, goes on for eight pages—all well

7

beyond any registered copyright identified in the Second Amended Complaint. The registration requirement prevents these kinds of fishing expeditions by "neatly defin[ing]" the scope of the litigation at the beginning of the case. *See id.*

Berthold has not met the requirements of Section 411 of the Copyright Act. Its copyright infringement claims must therefore be dismissed. Moreover, because Berthold only alleges supplemental jurisdiction as a basis for its state law breach of copyright claim, the dismissal of the copyright claims requires dismissal of the state law claim as well. (Doc. 45, ¶ 2.) Berthold's Second Amended Complaint should therefore be dismissed in its entirety.

## II.     The Second Amended Complaint Must be Dismissed Because Berthold Does Not Allege a Valid Copyright in the Allegedly Infringed Materials

The Second Amended Complaint must also be dismissed because Berthold does not allege a valid copyright in the allegedly infringed materials or that those materials are original. Berthold does allege that the Pro Software is validly copyrighted. (Doc. 45, ¶¶ 12-13, 26.) And Berthold claims that the Pro Software and the Licensed Software share certain unidentified software code. (*Id.*, ¶¶ 19, 26.) But Berthold does not that this unidentified shared code it is itself copyrightable. *See, e.g., The Revolution FMO, LLC v. Mitchell*, Case No 4:17CV2220, 2018 WL 2163651 (E.D. Mo. May 10, 2018). The shared code is only one element of the Pro Software, so it is not entitled to any *prima facie* validity—"[v]alidity of a copyright does not extend copyright protection to every element of the work." *Id.*; *see also Feist*, 499 U.S. at 348 ("[C]opyright protection may extend only to those components of a work that are original to the author.") Instead,

"[b]ecause the entirety of Plaintiff's copyrighted works are not necessarily original, and because Plaintiff fails to identify any relevant facts about even one portion of its works which were copied, the Court cannot reasonably infer that any of the copied portions pass the originality requirement" or are otherwise valid. *Id.* In view of the limited nature of potential copyright in fonts, and Berthold's own prior representation that it expects registration of the Licensed Software would be denied, there is good reason to question validity and originality here. Regardless, Berthold does not adequately allege these elements in the Second Amended Complaint, so it must be dismissed on this basis as well. *See id.*

### III. The Second Amended Complaint Must be Dismissed Because Berthold Does Not Plausibly Allege Infringement

Finally, Berthold's Second Amended Complaint also fails to state a claim because Berthold does not plausibly allege infringement—i.e., access and substantial similarity. *See Design Basics, LLC*, 858 F.3d at 1099. There is no allegation that Target ever had access to the Pro Software or its underlying code, and "[w]ithout access, there can be no copying and no viable claim for copyright infringement." *Id.* at 1105. Furthermore, Berthold does not allege that the allegedly infringing works are substantially similar to any protectable aspects of the Pro Software. *See, e.g., Feist Publications*, 499 U.S. at 361 (copyright infringement requires "copying of constituent elements of the work that are original"); *Design Basics*, 858 F.3d at 1101 ("When considering substantial similarity, it is essential to focus on protectable expression."). Berthold's Second Amended Complaint must therefore be dismissed on this basis as well.

9

## CONCLUSION

Berthold has not met the registration requirements of Section 411, and it has not stated a plausible claim for copyright infringement. Furthermore, without a federal copyright infringement claim, there is no basis for jurisdiction over the state law claim. Target therefore respectfully requests that the Second Amended Complaint be dismissed in its entirety.

Dated: May 22, 2018

*/s/ Peter M. Routhier*
Peter M. Routhier
**FAEGRE BAKER DANIELS LLP**
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 766-7000
Fax: (612)-766-1600
Email: Peter.Routhier@FaegreBD.com

*Counsel for Target Corporation*